Exhibit 4

COUNTERPART NO. _____ OF 4 SERIALLY NUMBERED, MANUALLY EXECUTED COUNTERPARTS.  TO THE EXTENT, IF ANY, THAT THIS LEASE CONSTITUTES CHATTEL PAPER UNDER THE UCC, NO SECURITY INTEREST IN THIS LEASE MAY BE CREATED THROUGH THE TRANSFER AND POSSESSION OF ANY COUNTERPART OTHER THAN COUNTERPART NO. 1.

## LEASE AGREEMENT

This Lease Agreement is made as of  April 20____ , 2022 by and between BANK OF UTAH, not in its individual capacity but solely as Owner Trustee ("Lessor"), for the benefit of Willis Lease Finance Corporation ("Beneficiary"), and, PAKISTAN INTERNATIONAL AIRLINES CORPORATION LIMITED, a company registered and governed by the laws of Pakistan, whose registered address and principal place of business is at PIA Head Office Building,  Jinnah International Airport, Karachi, 75200, Pakistan ("Lessee").

This Lease Agreement refers to and incorporates herein the terms of the International Air Transport Association IATA Document No. 5016-00 Master Short-Term Engine Lease Agreement dated December 1, 2002 ("*Master Agreement*"). This Lease Agreement modifies the Master Agreement, and as modified constitutes a single contract applicable to the leasing of the Engine defined below.  Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the Engine described in Part 1 herein, subject to the terms and conditions of this Lease Agreement.

### Part I – Referenced Provisions

"N/A" denotes non-applicability:

| *1. Engine* (clause 2.3.1(i); annex 1, definition) | | *2A+B. Engine Flight Hours (2A) and Engine Flight Cycles (2B) /Since Last Overhaul* (clause 2.3.1(ii); Annex 1, Definitions) | |
|---|---|---|---|
| Manufacturer: | CFM International | | |
| Engine Model: | CFM56-5B6/P | | |
| QEC: | P/N642-0101-641, S/N 8903001 including the components set forth in Appendix C hereto | Time Since New: | 30,255.00 |
| | | Time Since Overhaul: | * |
| Engine Serial Number: 697262 | | Cycles Since New: | 20,105 |
| Shipping Stand: | | Cycles Since Overhaul: | * |
| Cradle P/N D71CRA00004G09, S/N TCC210072-1-002 | | * See Block 13, Engine Documentation | |
| Base P/N D71TRO00005G01, S/N TCC210072-1-002 | | | |
| MVP Bag: | NPN, S/N: NSN | | |
| Serviceability Tag:   EASA Form 1 with FAA 8130-3 dual release | | | |
| Thrust: | 27,000 pounds | | |
| Horsepower: | Rated in excess of 550 horsepower | | |
| The Engine is currently configured as a CFM56-5B6/P.  Lessee is responsible for providing plug and converting the Engine for operation as a CFM56-5B4/P. | | | |

| 3A. Additional Conditions Precedent to Lessee's Obligations (clause 2.3.1(iii)) | 4. Conditions Precedent Time Period (clause 2.3.2) |
|---|---|
| N/A<br><br>**3B. Additional Conditions Precedent to Lessor's Obligations** (clause 2.3.3)<br><br>a. Receipt of any payments due on or prior to the Commencement Date (see Schedule 1);<br>b. Receipt of a copy of Lessee's maintenance program approved by the FAA (or Lessee's maintenance program approved by the applicable regulatory agency which shall be equivalent FAA FAR 121) with respect to the maintenance schedule for the applicable Engine;<br>c. The pre-positioning with Lessor's FAA counsel of duly executed original counterparts of the Lease Agreement in proper form for filing with the FAA.<br>d. Receipt by Lessor of a copy of the LRMA (as defined in Schedule 1) duly executed by Lessee.<br>e. If Lessee knows the aircraft on which the Engine will be installed before the date of delivery of the Engine, Lessee will obtain an executed copy of a Recognition Agreement, substantially in the form attached hereto as Appendix H.<br>f. Receipt by Lessor of the insurance (and, if required, reinsurance) certificates and brokers' letters of undertaking required by clause 8.2.1 of the Master Agreement.<br>g. Receipt by Lessor of a duly executed original Deregistration Power of Attorney given by Lessee in favor of Lessor, substantially in the form attached hereto as Appendix I.<br>h. Receipt by Lessor of a duly executed original Lessee Acknowledgment substantially in the form attached hereto as Appendix J. | N/A |
| **5. Commencement Date** (clause 2.4.1; annex 1, definition)<br><br>May<br>~~April~~ 17 , 2022 | **6. Acceptance Certificate** (clause 2.4.2; annex 1 definition)<br><br>Required |
| **7. Deposit and/or Letter of Credit** (clause 3.1)<br><br>See Schedule 1 attached | **8. Rent** (clause 3.2; annex 1, definition)<br><br>See Schedule 1 attached |
| **9. Rent Payment Date** (clause 3.2; annex 1, definition)<br><br>On Commencement Date and on the same day of the month each month thereafter during the Term | **10. Default Rate** (clause 3.5; annex 1, definition)<br><br>Four and one half per cent (4.25%) per annum over LIBOR (as determined by reference to offered rate for deposits in U.S. Dollars for a period of one month on the first day of the applicable month, and published by the British Bankers Association, "LIBOR" ), but not to exceed the maximum amount permitted by law. |
| **11. Agreed Currency** (clause 3.7.2; annex 1, definition)<br><br>United States Dollars | **12. Payment Account** (clause 3.7.2; annex 1, definition)<br><br>Bank:  City National Bank<br>Los Angeles, CA, U.S.A.<br>ABA No.:  122 016 066<br>Swift Code:  CINAUS6L<br>Acct. No.:  432633411<br>Acct. Name:  Willis Lease Finance Corp.<br><br>or such other account as designated by Lessor in |

| | writing |
|---|---|
| **13. Engine Documentation** (clause 4.2.1 (i))<br>At delivery Lessor will provide:<br>a. EASA Form 1 with FAA 8130-3 dual release Serviceability Tag<br>b. Life Limited Parts List (disk profile) attached as Appendix B hereto)<br>c. Component and QEC List attached as Appendix C hereto<br>d. Plus all additional documentation specified in the separate technical document delivery letter dated on or about the date of this Lease Agreement. | **14. Engine Reports – Other Information**<br> (clause 4.2.4 (ii))<br><br>The monthly report should also include the information in point 15 herein and shall be in the form of Appendix D hereto. |
| **15. Engine Installation/Removal Notification Requirements** (clause 4.2.6)<br><br>Engine installation and removal dates.<br><br>Aircraft Total Hours and Total Cycles at Engine installation and removal.<br><br>Aircraft serial number and position of the Engine. | **16. Certain Lessee Obligations Concerning Indemnitees**<br>(clause 4.4.6)<br><br>The following actions are required by the Additional Indemnitees and shall be performed by Lessee at its expense:<br><br>Maintain the ownership placard that Lessor has installed on the Engine, or if requested by Lessor, affix and maintain any such ownership placard that Lessor may provide to Lessee during the Term. |
| **17. Consequences of Partial Loss** (clause 7.2.1(ii))<br><br>Engine remains on lease | **18. Stipulated Amount** (clause 7.3.1; annex 1, definition)<br><br>See Schedule 1 attached |
| **19. Reinsurance** (clause 8.1)<br><br>Reinsurance shall be provided if required for Lessee to meet the requirements of Annex 4. | **20. Redelivery Location** (clause 11.1 (i); annex 1, definition)<br><br>DDP Willis Engine Repair Center, UK facility, Bridgend, Wales, UK |
| **21. Redelivery-additional requirement** (clause 11.1 (ii)) | **22. Final Inspection-other tests** (clause 11.3.1 (ii))<br><br>Redelivery procedures in accordance with the attached *Schedule 1*, inclusive of a current test cell run, long term preservation in accordance with the manufacturer's procedures, complete engine video borescope inspection, "C" check, or equivalent inspection, dual release FAA/EASA serviceability tag and additional requirements as described in the attached *Schedule 1*. |
| **23. Redelivery–Additional Documentation** (clause 11.4 (viii))<br><br>See Appendix F attached | **24. Transportation – supplemental requirements** (clause 11.5)<br><br>Manufacturer's published recommendations, including completely sealing and covering the Engine, complying with proper equipment tie-down procedures and the use of air-ride suspension vehicles. |
| **25. Additional Amounts – Term Extension** (clause 11.6.2)<br><br>See Schedule 1 attached | **26. Differing Period** (clause 14.1 (i))<br><br>N/A |

| **27. Notices** (clause 16.5) | **28. Contracting by Fax/Electronic Writing** (clause 16.6) |
|---|---|
| Electronic mail, courier or by certified or registered mail (airmail if overseas) or the equivalent (return receipt requested) as follows: | Execution by facsimile or electronic media is not acceptable. |
| **For Lessor:** | |
| Bank of Utah, as Owner Trustee<br>50 South 200 East, Suite 110<br>Salt Lake City, UT 84111 U.S.A.<br>Attention: Corporate Trust<br>Email: corptrust@bankofutah.com<br>Telephone No: +1 (801) 924-3690 | |
| With a copy to Beneficiary at:<br>60 East Sir Francis Drake Blvd., Suite 209<br>Larkspur, CA 94939 U.S.A.<br>Attn: General Counsel<br>Email: dpoulakidas@willislease.com<br>Telephone.: +1 (415) 408-4732 | |
| **For Lessee:**<br>Pakistan International Airlines Corporation Limited<br>PAI Head Office<br>Old Airport, Terminal 1<br>Karachi, 75200<br>Pakistan<br>Attn: Amir Ali,<br>Chief Technical Officer<br>PAI Engineering and Maintenance Dept, Head Office<br>Karachi Airport, Karachi<br>Email: amir.ali.piac.aero<br>Telephone No.: +922199044365 | |
| CFO:<br>Name: Amos Nadeem<br>Email: cfo@piac.aero | |
| Treasurer:<br>Name: Asif Zia<br>Email: khibcpk@piac.aero | |
| **29. Governing Law** (clause 16.7) | **30. Nonexclusive Jurisdiction** (clause 16.8.1(i)) |
| State of New York | Courts of the State of New York and the United States District Court located in the Borough of Manhattan, New York City. |
| **31. Additional Indemnitees** (annex 1, definition) (for use, inter alia, in definition of "Indemnitees") | **32. Business Day** (annex 1, definition) |
| Use the following language for MUFG Union Bank....<br>The parties listed on Appendix E hereto shall be (i) Additional Indemnitees and (ii) shall be additional insureds under the Insurances. The party so identified on Appendix E hereto shall be named as sole loss payee. | New York City, San Francisco, Salt Lake City, and Karachi, Pakistan |



Lease-PIA-697262

4

| *33. Use Fee Amount (Cycle)* (annex 1, definition) (for use in definition of "Use Fees (Cycle)") | *34. Use Fee Amount (Flight Hour)* (annex 1 definition) (for use in definition of "Use Fees (Flight Hours)") |
|---|---|
| See Schedule 1 attached | See Schedule 1 attached |
| *35. Scheduled Final Date* (annex 1, definition) (for use in definition of "Final Date") April ~~March~~  16 , 2023  See also Schedule 1 attached hereto. | *36. Principal Taxation Jurisdictions* (annex 1 definition) (for use in definition of "Lessor Tax")  United States |
| *37. Calculation Discount Rate* (annex 1, definition) (for use in definition of Termination Damage Amount)  5% per annum | *38. Threshold Amount*   (annex 1, definition)  $10,000 |
| *39. Required Liability Amount* (annex 4, clause 4)  At least US$750,000,000 | *40. Deductibles* (annex 4, clause 8)  Not more than US$300,000 for aircraft hull and $10,000 for Spares. |

**Part II – Modifications Applicable Where Lessee Is Not an Airline or Other Operator of Engines**

Pursuant to *2.1.4* of the Lease Agreement, the Master Agreement is modified as follows ("N/A" denotes non-applicability):

Sublease: N/A

**Part III – Other Modification to Master Agreement**

As regards this Lease Agreement, the Master Agreement is further modified as:

The delivery location is EXW the facility of Willis Engine Repair Center, UK facility, Bridgend, Wales, UK (the "Delivery Location").  Within three (3) months following the Commencement Date of the Lease Agreement, Lessor will provide Lessee with a transportation credit in an amount set forth on Schedule 1 hereto (the "Transportation Credit") provided that (i) Lessee shall have paid all sums then due and owing to Lessor under this Lease Agreement; and (ii) no Lessee Event of Default shall have occurred and then be continuing under this Lease Agreement.

All references to the term "JAA" are replaced with the term "EASA", if applicable.

3.1 Delete ", promptly following the date on which the last Use Fees are payable under 3.3," and replace with ", promptly following the date on which the Lessee has performed all of its obligations under this Lease Agreement including the redelivery of the Engine Package in accordance with the terms of this Lease Agreement and the payment of all sums due under this Lease Agreement,"

Insert the following clause: "3.7.4 All payments by Lessee to Lessor shall originate or otherwise come from a bank that is neither sanctioned nor specifically restricted by the United States of America, European Union or United Nations."

4.6.2 insert the words "(to include the additional costs incurred as a result of the Engine requiring the repair)" in the first line after the word "Engine" and before the comma.

Insert the following clause: "4.6.4 Lessor shall be responsible for Engine repairs related to normal wear and tear and engine failure except if caused by Lessee's negligence, improper transportation and/or mishandling of the Engine, operational mishandling of the Engine, operation of the Engine beyond limits, or a foreign object."

Lease-PIA-697262                                                    5

6.1(i) add the following clause at the end of the sentence after the word "Consents": ", provided, however, Lessee agrees that it will not export or divert the Engine contrary to or in violation of the United States of America's export control and/or economic sanction laws."

10.2.3(vii) (b) insert the word "materially" before the word "increase".

11.2.1    add the following sentence at the end of this clause: "All maintenance tasks related to the return of the Equipment (including, without limitation, Equipment testing, inspections, MPD tasks, preservation tasks, Equipment repairs, Airworthiness Directives accomplished, Service Bulletins accomplished, and any other associated tasks) are to be included on the serviceable tag."

11.3.1 insert the words "and upon a minimum of seven (7) days' advance notice to Lessor (or such other period as stated in the Lease Agreement) of the time and location so that Lessor may have an agent present during such video borescope and performance tests" after the word "redelivery" and before the comma.

11.3.2 insert the words "and shall repair at Lessee's sole expense any defects for which Lessee is responsible under 4.6 of the Master Agreement" after the clause "required by 11.3.1" and before the period.

11.4. (iv) change the words to read "Engine statement or computerized record, certified by the operator, of Engine hours and cycles to include, as a minimum, the Engine hours and cycles at each installation and removal;

11.4. (v) insert the word "current" before "engine".

11.4 (vi) insert the word "current" before "serviceability" and insert the words, "required by Section 11.2.1" after the word, "tag".

12.2    Delete "provided Lessor has notified Lessee thereof within 30 Business Days of redelivery." And replace it with "provided Lessor has notified Lessee within 30 Business Days of redelivery that Lessor intends to procure the repair of the Engine."

12.3    Insert "to the extent" after "repairs" and before "contemplated".

14.1**(vi)** is deleted and replaced with the following:

"**(vi)**        an "Event of Default" is continuing under any Lease Agreement entered into between Lessee and Lessor utilizing this Master Agreement, and/or an "Event of Default" or "Default" (each, as defined in the applicable agreement) is continuing under any other "Lease" or "Lease Agreement" or "Aircraft Engine Lease Agreement" or similar agreement entered into between Lessee, as lessee, and Lessor or any Related Party, as lessor, whether or not utilizing this Master Agreement.  As used herein, "Related Party" means: (a) Willis Lease Finance Corporation ("Willis"), (b) any affiliate of Willis, (c) any joint venture of which Willis is a shareholder, or (d) any owner trust of which any of the foregoing persons (a)–(c) is a beneficiary."

16.11. Add the following sentence at the end. "Each Lease Agreement shall be executed in at least four (4) serially numbered counterparts, only counterpart 1 of which shall be deemed chattel paper for financing purposes and shall be so marked."

16.13 Add a period after the word "Agreement" and delete the remainder of the sentence.  Add the following after the first sentence:

"Lessee will cooperate with Lessor in order to register the Lease Agreement with the International Registry established pursuant to the Cape Town Convention (as defined below).  Lessor shall initiate a registration of the Lease Agreement and Lessee shall consent to such registration, or appoint a professional user for such purpose, with such consent to be lodged within 36 hours of initiation of the registration by Lessor.

Lessor also intends to record this Lease Agreement with the Department of Transportation, Federal Aviation Administration, FAA Registry, Oklahoma City, Oklahoma, the appropriate authority in Pakistan, and with such other similar authority in each jurisdiction where the Engine may be leased from time to time, the reasonable costs of which shall be borne by Lessor.  Upon the termination of this Lease Agreement for any reason whatsoever, each of the parties will execute and deliver to the other party promptly such documents and discharges as the other party may reasonably request in order to file a termination of this Lease Agreement with the FAA or other authority and evidence of the discharge of the Lease Agreement with the International Registry.

For purposes of this Lease Agreement:

"Cape Town Convention" shall mean the Convention on International Interests in Mobile Equipment (the "Convention") and the Protocol to the Convention on International Interests in Mobile Equipment on Matters Specific to Aircraft Equipment (the "Protocol"), both signed in Cape Town, South Africa on November 16, 2001, together with any protocols, regulations, procedures, rules, orders, agreements, instruments, amendments, supplements, revisions or otherwise that have or will be subsequently made in connection with the Convention and/or the Protocol by the "Supervisory Authority" (as defined in the Protocol), the "International Registry" or the "Registrar" (as defined in the Convention) or an appropriate "registry authority" (as defined in the Protocol) or any other international or national body or authority."

16.15. Delete this entire section and any other reference to it in the Master Agreement.

16.16 (i) is deleted in its entirety and replaced with the following: "(i) (a) Lessee may not assign or transfer any of its rights or obligations under this Agreement or any Lease Agreement without the prior written consent of Lessor and any such attempted assignment shall be null and void. (b) Lessor shall have the absolute right to transfer or assign, for security purposes or otherwise, to any person, firm, corporation or other entity, any or all of Lessor's rights, obligations, benefits and interest under this Agreement or any Lease Agreement or to any Engine Package."

Insert the following clause: "16.17 Lessor's Lender.  Following receipt of notice from MUFG Union Bank, N.A., its successors and/or assigns, as Security Agent and Administrative Agent, or any other party designated in writing by Lessor ("Lessor's Lender"), to Lessee that an "Event of Default", as defined in the mortgage and security agreement between Lessor and Lessor's Lender (the "Mortgage"), has occurred, Lessor's Lender shall be entitled to exercise all rights, remedies, powers and privileges of Lessor, as lessor, to the exclusion of Lessor, provided that the rights of Lessor's Lender under the Mortgage shall be subject in all respects to the rights of the Lessee under this Lease Agreement and, so long as no event of Default under the Lease Agreement shall have occurred, Lessor's Lender will not interfere with the Lessee's quiet and peaceful possession, use and enjoyment of the Engine leased under this Lease Agreement."

Insert the following clause: "16.18 Trustee Capacity. It is understood and agreed that the Lessor is entering into this Lease Agreement solely in its capacity as owner trustee under a trust agreement and that Lessor shall not be liable or accountable in its individual capacity in any circumstances whatsoever except for its own gross negligence or willful misconduct and as otherwise expressly provided in such trust agreement, all such individual liability being hereby waived, but otherwise shall be liable or accountable solely to the extent of the assets of the trust estate (as defined in such trust agreement)."

Annex 1 is modified as follows:

If applicable, a new definition "**EASA**" is added and means the European Aviation Safety Agency, which is the joint regulatory authority relating to civil aviation matters in the European Union or such other governmental or European Union entity that may replace it from time to time.

Annex 4 is modified as follows:

1.(a) "AVN52C" is changed to "AVN52E".

1.(a) Add the following at the end of the paragraph: "(however, the total War Risks Liability coverage including Third Party War Risks must be the same amount as the combined single limit either by the purchase of Excess Third Party War Risks insurance and/or any other applicable government sponsored insurance program for aviation war risk liabilities)".

1.(c) Add the following after the word "air" in the second line "with respect to peril (a) of AVN 48B".

1.(d) Delete "aviation hull" and replace with "aviation hull/spares" in the first line and delete "LSW555B" in the second line and replace with "LSW555D".

The term "Hull All Insurance" is changed to "Hull All Risks Insurance" wherever it appears.

10. In the second sentence of the italicized paragraph, the word "equipment" is changed to "Engine".

## Part IV – Schedule and Appendices

**Schedule 1** hereto contains proprietary commercial information which will not be filed with the FAA.

**Appendix A** hereto is the form of **Acceptance Certificate**, the execution of which, as contemplated by point 6 above, effects or evidences Lessee's acceptance of the Engine hereunder.

**Appendix B** hereto is the Life Limited Parts List as contemplated by point 13 above.

**Appendix C** hereto is the Component and QEC Listing as contemplated by point 13 above.

**Appendix D** hereto is the form of Monthly Engine Utilization Report as contemplated by point 14 above.

**Appendix E** hereto is the list of Additional Insureds as contemplated by point 19 above and the list of Additional Indemnitees as contemplated by point 31 above.

**Appendix F** hereto is the list of the Redelivery-Additional Documentation as contemplated by point 23.

**Appendix G** hereto is the Engine Certification statement.

**Appendix H** hereto is the Recognition Agreement as contemplated in point 3B above.

**Appendix I** hereto is the form of Deregistration Power of Attorney as contemplated in point 3B above.

**Appendix J** hereto is the form of Lessee Acknowledgment as contemplated in point 3B above.

**IN WITNESS** whereof, Parties have executed this Lease Agreement on the respective dates specified below.

| PAKISTAN INTERNATIONAL AIRLINES CORPORATION LIMITED, as Lessee | BANK OF UTAH, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE, as Lessor |
|---|---|
| BY:_____ | BY:_____ |
| NAME:_____ | NAME:_____ |
| TITLE:_____ | TITLE:_____ |
| DATE:_____ | DATE:_____ |

Air Marshal Arshad Malik
Chief Executive Officer
Pakistan International Airlines

Lease-PIA-697262

9

**IN WITNESS** whereof, Parties have executed this Lease Agreement on the respective dates specified below.

| PAKISTAN INTERNATIONAL AIRLINES CORPORATION LIMITED, as Lessee | BANK OF UTAH, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE, as Lessor |
|---|---|
| BY:_____ NAME:_____ TITLE:_____ DATE:_____ | BY:_____ NAME: Kade Baird_____ TITLE: Assistant Vice President_____ DATE:_____ |

**Schedule 1**
Lease Agreement

**3. *Payments Due*** (clause 2.3.3) – **3. *Payments Due*** (clause 2.3.3) – $174,000.00 ($43,500 Rent due on Commencement Date plus ($130,500.00 cash Security Deposit)

**7. *Deposit and/or Letter of Credit*** (clause 3.1) – Cash Deposit of $130,500.00

**8. *Rent*** (clause 3.2; annex 1, definition) – $43,500.00 per month

**18. *Stipulated Amount*** (clause 7.3.1; annex 1, definition) – $10,000,000.00

**22. *Final Inspection-other tests*** (clause 11.3.1 (ii)) -

Two (2) weeks prior to Lessor's receipt of the ERR Return Notice (as defined below), Lessee shall provide to Lessor, for Lessor's review, preliminary Engine Condition Monitoring ("ECM") or Engine Health Monitoring ("EHM") (as applicable) data. If no unusual and/or unacceptable condition is noted within such preliminary data, then, immediately after the final flight, Lessee will provide to Lessor and the OEM, for each of their respective review, final ECM or EHM (as applicable) covering the last six months of operation prior to removal of the Engine for redelivery, in a format approved by the OEM for the purpose of generating the Engine Redelivery Report (the "ERR"), and authorization for Lessor and the OEM to access such ECM or EHM (as applicable) data to allow the OEM to create the ERR. Lessor will invoice, and Lessee agrees to pay the then-current rate for an ERR. (For reference only, the 2021 rate is US$5,000.00.) If no unusual and/or unacceptable condition is noted within such final data, then Lessor will provisionally waive a requirement for a Test Cell Run (as defined below) and accept in its place an ERR return ("ECM Return"). If, on the other hand, the OEM is unable to produce the ERR due to issues with the ECM or EHM (as applicable) data provided, or if the OEM considers that the ERR has determined issues in the ECM or EHM (as applicable) data affecting the serviceability of the Engine, then Lessee shall be required to cause a full performance test cell run ("Test Cell Run") to be performed on the Engine by an FAA FAR Part 145 or EASA Part 145 approved repair station reasonably acceptable to Lessor at Lessee's sole expense. In addition to the ERR (or, if applicable, the Test Cell Run), (i) Lessee will perform or cause to be performed on the Engine immediately prior to its return to Lessor, at Lessee's sole expense, a full (compressor, combustion and turbine sections) video borescope inspection ("Borescope Inspection") to be accomplished after the Test Cell Run Return if applicable; (ii) the Engine will be inspected to the equivalent of the requirements of the respective aircraft manufacturer's Maintenance Planning Document ("MPD") "C" Check; and (iii) any outstanding tasks required by Lessee's Approved Maintenance Program and maintenance schedule within twenty-four (24) months of continued operation will be performed.

Throughout the Lease Term, Lessee will monitor and record Engine performance and, at redelivery, Lessee will provide complete and legible ECM or EHM (as applicable) data, to include both take off and cruise performance and mechanical parameters covering the last six months of operation of the Engine prior to removal for the redelivery. Lessee shall at its sole expense, perform or cause to be performed, a full performance Test Cell Run if: Lessee fails to provide the required ECM or EHM (as applicable) data; or fails to provide the Engine's operating, maintenance and inspection history during the lease; or a review of the Engine's operating, maintenance or inspection history, or ECM or EHM (as applicable) data throughout the Lease Term determines that there are issues or deficiencies with the Engine; or the Borescope Inspection or Engine "C" Check/MPD inspection identifies evidence of an exceedance of the OEM's limits with respect to the Engine or an accelerated rate of deterioration of the Engine's operating parameters as determined by Lessor and Lessee (or, if Lessor and Lessee disagree, then by the OEM); or the Engine condition is not consistent with the OEM's published unrestricted reinspection intervals, in which event Lessee will immediately notify Lessor of the findings.

If the ERR Return, aforementioned required data, operating or maintenance history, Borescope Inspection or Engine "C" Check/MPD inspection or, if required, the Test Cell Run, identifies any evidence of an exceedance of the OEM's limits with respect to the Engine or an accelerated rate of deterioration of the monitored Engine operating parameters as determined by Lessor and Lessee (or, if Lessor and Lessee disagree, then by the OEM), in each case for which Lessee is responsible under Clause 4.6.2 of the Master Agreement, then Lessee will be responsible for repairing the Engine to return it to the acceptable standard for the Engine and the costs therefor in accordance with Clause 4.6.2 of the Master Agreement. Lessee shall be liable for repairs and/or correction of any condition that results in a reinspection interval for which Lessee is responsible, as required by Clause 4.6.2 of the Master Agreement. For the avoidance of doubt, the Engine shall continue to remain on lease until the aforementioned repairs and/or corrections have been completed to Lessor's satisfaction.

Lessee shall provide Lessor with a minimum of two (2) weeks' advance notice of Lessee's intention to perform the ERR Return (the "ERR Return Notice"), Borescope Inspection and, if required, the Test Cell Run, and a minimum of

Lease-PIA-697262                                          10

ten (10) days' advance notice prior to performing the Borescope Inspection and, if required, the Test Cell Run to include the location of such inspection (or test), so that Lessor shall have time to have a technical representative present during such Engine inspections and tests, as applicable. In the event Lessee fails to provide the requisite advance notice to Lessor and Lessee performs any inspections or tests, as applicable, without Lessor's technical representative present to witness same, Lessee will be required to re-perform such inspections and/or tests, as applicable, with Lessor's technical representative present.

Lessee will return the Engine through the Willis Lease Managed Return Program, as documented in and subject to the terms and conditions of a separate, stand-alone Lease Return Management Agreement ("LRMA") provided that the requirement for a Test Cell Run is not deemed necessary. If a Test Cell Run is required, the additional costs will be payable by the Lessee and details of the costs involved will be outlined in the LRMA.

**24. Transportation – supplemental requirements** (clause 11.5)

Transportation Credit: US$10,000.00

**25. Additional Amounts – Term Extension** (clause 11.6.2) –

115% of the Rent for the Engine Package, payable weekly in arrears, for each day following the expiration of the Term until the Engine Package is returned to Lessor in the condition required by Section 11 and pursuant to all other terms and conditions of the Lease Agreement.

In addition, failure by Lessee to return any Part to Lessor, or failure to return any Part in accordance with the requirements of the Lease Agreement, upon termination of the Lease shall result in Lessor purchasing such Part on behalf of Lessee at up to full list price and invoicing Lessee for such cost plus a handling fee equal to 13% of such cost, which fee is capped at $5,000.00 per Part. Lessee shall pay such invoice for such Additional Amounts within 30 days of receipt.

**33.** Use Fees:          Per the grid below:

| Pakistan Int'l Air, Short Term, 2021 Rates CFM56-5B4 (TI or NTI), High Severity, 5% Proven Derate | | |
|---|---|---|
| **Ratio** | **Hourly** | **Cyclic** |
| 0.5 up to 0.5999 to 1 | $ 854.13 | $ 223.30 |
| 0.6 up to 0.6999 to 1 | $ 711.77 | $ 223.30 |
| 0.7 up to 0.7999 to 1 | $ 610.09 | $ 223.30 |
| 0.8 up to 0.8999 to 1 | $ 533.83 | $ 223.30 |
| 0.9 up to 0.9999 to 1 | $ 474.52 | $ 223.30 |
| 1.0 up to 1.0999 to 1 | $ 427.06 | $ 223.30 |
| 1.1 up to 1.1999 to 1 | $ 400.25 | $ 223.30 |
| 1.2 up to 1.2999 to 1 | $ 378.60 | $ 223.30 |
| 1.3 up to 1.3999 to 1 | $ 361.00 | $ 223.30 |
| 1.4 up to 1.4999 to 1 | $ 346.64 | $ 223.30 |
| 1.5 up to 1.5999 to 1 | $ 334.95 | $ 223.30 |
| 1.6 up to 1.6999 to 1 | $ 320.81 | $ 223.30 |
| 1.7 up to 1.7999 to 1 | $ 308.62 | $ 223.30 |
| 1.8 up to 1.8999 to 1 | $ 298.06 | $ 223.30 |
| 1.9 up to 1.9999 to 1 | $ 288.91 | $ 223.30 |
| 2.0 up to 2.0999 to 1 | $ 280.96 | $ 223.30 |
| 2.1 up to 2.1999 to 1 | $ 271.88 | $ 223.30 |
| 2.2 up to 2.2999 to 1 | $ 263.75 | $ 223.30 |

| | | |
|---|---|---|
| 2.3 up to 2.3999 to 1 | $ 256.46 | $ 223.30 |
| 2.4 up to 2.4999 to 1 | $ 249.92 | $ 223.30 |
| 2.5 up to 2.5999 to 1 | $ 244.04 | $ 223.30 |
| 2.6 up to 2.6999 to 1 | $ 236.68 | $ 223.30 |
| 2.7 up to 2.7999 to 1 | $ 229.90 | $ 223.30 |
| 2.8 up to 2.8999 to 1 | $ 223.64 | $ 223.30 |
| 2.9 up to 2.9999 to 1 | $ 217.85 | $ 223.30 |
| 3.0 up to 3.0999 to 1 | $ 212.47 | $ 223.30 |
| 3.1 up to 3.1999 to 1 | $ 207.47 | $ 223.30 |
| 3.2 up to 3.2999 to 1 | $ 202.82 | $ 223.30 |
| 3.3 up to 3.3999 to 1 | $ 198.49 | $ 223.30 |
| 3.4 up to 3.4999 to 1 | $ 194.44 | $ 223.30 |
| 3.5 up to 3.5999 to 1 | $ 190.65 | $ 223.30 |
| 3.6 up to 3.6999 to 1 | $ 187.11 | $ 223.30 |
| 3.7 up to 3.7999 to 1 | $ 183.79 | $ 223.30 |
| 3.8 up to 3.8999 to 1 | $ 180.68 | $ 223.30 |
| 3.9 up to 3.9999 to 1 | $ 177.77 | $ 223.30 |
| 4.0 up to 4.0999 to 1 | $ 175.03 | $ 223.30 |

If the hour:cycle ratio decreases or increases, the flight hour charge will be increased or decreased proportionally.  On 01 January 2022 and each January 1st thereafter, Use Fees will be adjusted based on actual operating environment, severity, proven derate level, and hour:cycle ratio, and will be escalated by the percentage of the OEM's non-LLP part price (for flight hours) and OEM's LLP part price (for flight cycles) for such year.

**35. Scheduled Final Date:** *(annex 1, definition) (for use in definition of "Final Date") -* At the end of the Term, but only upon thirty (30) days prior written notice to Lessor and provided that no Event of Default has occurred and is continuing under the Lease Agreement, Lessee may elect to extend the Scheduled Final Date for two (2) consecutive periods of three (3) months, subject to Lessor's agreement, at then agreed upon terms and conditions.

**Appendix A**

**Acceptance Certificate**

Bank of Utah,
as Owner Trustee
50 South 200 East, Suite 110
Salt Lake City, UT 84111 U.S.A.

Re: **Acceptance of Engine Package**

Dear Sir/Madam,

Reference is made to the Lease Agreement between you ("**Lessor**") and us ("**Lessee**") dated _____, 2022 ("**Lease Agreement**") regarding the leasing by Lessee of one (1) CFM International model number CFM56-5B6/P aircraft engine bearing manufacturer's serial number 697262 ("**Engine**"). Terms used herein without definition have the meanings assigned in the Lease Agreement.

Lessee hereby confirms to Lessor that:

**(i)** on _____, 2022 at the facility of WERC UK, Bridgend, Wales, Lessee accepted delivery of the Engine, as described in **Part I, point 1** of the Lease Agreement and the Engine Documentation, as described in **Part I, point 13** of the Lease Agreement;

**(ii) Appendices B & C** to the Lease Agreement lists all Parts so received by Lessee; and

**(iii)** the Engine Documentation confirms the Engine Flight Hours and Engine Flight Cycle information and data summarized on **Appendix B** to the Lease Agreement.

**PAKISTAN INTERNATIONAL AIRLINES CORPORATION LIMITED**

By:     _____

Date:   _____

**Appendix B**
**Life Limited Parts List**

**(pages to follow)**

**Willis Lease** — Power to Spare · Worldwide

1 of 1

# ESN: 697262

## General Engine info

| | |
|---|---|
| Model and type of engine | CFM56-5B6/P |
| Current power rating of engine | 5B6/P |
| EGT Margin of engine deg C | 103.11 |
| EGT Margin value date | 25-Aug-21 |
| Current Location | In storage - Tarmac, France |
| Engine at date | 31-Aug-2021 |
| Current TSN of engine | 30,255.00 |
| Current CSN of engine | 20,105 |
| | |
| Last installation /Shop input | 29-Jun-21 |
| TSN of last installation / shop input | 30,255.00 |
| CSN of last installation / shop input | 20,105 |

## Non Limited Parts Information

| Name | Part Number | Serial Number |
|---|---|---|
| Shipping stand Cradle | D71R0N000409 | TCG210072-1-02 |
| Shipping stand base | D71R0N00805001 | TCG210072-1-02 |

## Aircraft Information

| | |
|---|---|
| Aircraft registration | N/A |
| Position | N/A |
| Current TSN of Aircraft | N/A |
| Current CSN of Aircraft | N/A |
| TSN of Aircraft at last installation | N/A |
| CSN of Aircraft at last installation | N/A |
| Engine Status | In Storage |

## Engine Comments:

EGT margin noted at 5B6/P thrust per GE/CFM Engine
Reddiviwry Report (OEM Health Record) dated 25-Aug-2021
Estimated EGT margin at 5B4/P thrust 95 deg C

LPT Rear Frame limit is the inspection threshold as stated in Cmp
5. Refer to SB 72-0620.

## Limiting Part Information

| Power Rating | Limiting Part | Cycles Remaining |
|---|---|---|
| 5B6/P | LPT Rotor (Turbine Rear Frame) | 4,895 |

## Limiting Inspection Information

| Type | Description | Limit | Remaining |
|---|---|---|---|
| Hour Limit | N/A | N/A | N/A |
| Cycle Limit | 2016-09-06 | 20,904 | 799 |
| Date Limit | Engine Preservation | 09-May-22 | 248 |

## Last Shop Visit Information

| | |
|---|---|
| Time since last HSV | 695.00 Hours   328 Cycles |
| Time since last SV | 0.00 Hours   0 Cycles |
| Last Repair Agency | TAP/MAC |
| Last SV Workscope | Borescope |
| Airworthiness Release | 18-Aug-21 | EASA, FAA |

## LLP Parts

| Module Name | Name | Part Number | Serial No | Total Hours | Total Cycles | Cycles Used 5B6/P | Cycles Limit 5B6/P | Cycles Remaining 5B6/P |
|---|---|---|---|---|---|---|---|---|
| Fan Rotor | Fan Disk | 338-001-504-0 | MX276695 | 30,255.00 | 20,105 | 20,105 | 30,000 | 9,895 |
| Fan Rotor | Fan Booster Spool | 338-001-906-0 | 85/282340 | 30,255.00 | 20,105 | 20,105 | 30,000 | 9,895 |
| Fan Rotor | Fan Shaft | 338-010-601-0 | DSX87277 | 30,255.00 | 20,105 | 20,105 | 30,000 | 9,895 |
| HPC Rotor | HPC Stg 1-2 Spool | 1558GM1G07 | F928HFF9 | 695.00 | 328 | 328 | 20,000 | 19,672 |
| HPC Rotor | HPC Stg 3 Disk | 2118M23P01 | XALCN97U | 695.00 | 328 | 328 | 20,000 | 19,672 |
| HPC Rotor | HPC Stg 4-9 Spool | 2048N92G05 | GWN148F6 | 695.00 | 328 | 328 | 20,000 | 19,672 |
| HPC Rotor | HPC Fwd Shaft | 1386A456P03 | GWN145KH | 695.00 | 328 | 328 | 20,000 | 19,672 |
| HPC Rotor | HPC CDP Seal | 2110M22P01 | 091-KKN48 | 695.00 | 328 | 328 | 20,000 | 19,672 |
| HPT Rotor | HPT Disk | 1408M43P07 | GWN13R05 | 695.00 | 328 | 328 | 20,000 | 19,672 |
| HPT Rotor | HPT Front Aeseal | 2118M29P02 | TMT1AR60 | 695.00 | 328 | 328 | 20,000 | 19,672 |
| HPT Rotor | HPT Front Shaft | 2048M21P03 | XASRE441 | 695.00 | 328 | 328 | 20,000 | 19,672 |
| HPT Rotor | HPT Rear Shaft | 1804M90P04 | TMT19LK9 | 695.00 | 328 | 328 | 20,000 | 19,672 |
| LPT Rotor | LPT Stg 1 Disk | 336-001-804-0 | HDS58784 | 695.00 | 328 | 328 | 25,000 | 24,672 |
| LPT Rotor | LPT Stg 2 Disk | 336-001-905-0 | PCH35124 | 695.00 | 328 | 328 | 25,000 | 24,672 |
| LPT Rotor | LPT Stg 3 Disk | 336-009-006-0 | PCH6RT40 | 695.00 | 328 | 328 | 25,000 | 24,672 |
| LPT Rotor | LPT Stg 4 Disk | 336-092-105-0 | HC14R998 | 695.00 | 328 | 328 | 25,000 | 24,672 |
| LPT Rotor | LPT Conical Support | 340-301-702-0 | HD112244 | 695.00 | 328 | 328 | 25,000 | 24,672 |
| LPT Rotor | LPT Shaft | 338-010-804-0 | PCR56982 | 695.00 | 328 | 328 | 25,000 | 24,672 |
| LPT Rotor | LPT Case | 338-117-405-0 | DC727215 | 30,255.00 | 20,105 | 20,105 | NIL | NIL |
| LPT Rotor | Turbine Rear Frame | 338-171-705-0 | LA153099 | 30,255.00 | 20,105 | 20,105 | 25,000 | 4,895 |

Authorising Signature



_____
Date

Although the information in this report has been obtained from sources which Willis Lease Finance Corporation (as Servicer) believes to be reliable, any such information may be incomplete or condensed.
All data and information included in this record is for information purposes only, and is not intended as official documentation with respect to the purchase of this engine.

**Appendix C**
**Component and QEC List**

**(pages to follow)**

# WILLIS LEASE FINANCE, AS SERVICER
## CFM56-5B
## ACCESSORY INVENTORY

| | | ESN | 697262 | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | ETI: | 30,255.00 | LOCATION: | Tarbes | | | |
| | | ETC: | 20,105 | OPERATOR: | AuroraCDB | | | |
| | | TECHNICAL DEPARTMENT VERIFICATION BY: | P.Hamill | DATE: | 20-Aug-2021 | | | |
| | | RECORDS DEPARTMENT VERIFICATION BY: | A.Patterson | DATE: | 8-Sep-2021 | | | |

| QTY | DESCRIPTION | TYPICAL PART NUMBER | PART NUMBER | SERIAL NUMBER | TSN | TSO | TSI/TSR | REMARKS |
|---|---|---|---|---|---|---|---|---|
| 1 | AIR STARTER | 301-806-901-0 | 301-812-401-0 | YG459963-F | N/R | N/R | 695.00 | |
| 1 | ALTERNATOR, STATOR | 2123463P02 | 5065691 | GJA41253 | 30,255.00 | 30,255.00 | 30,255.00 | |
| 1 | CHIP DETECTOR | 301-800-401-0 | 5507-9010-0 | Y01100783L | 695.00 | 695.00 | 695.00 | |
| 1 | CLOGGING INDICATOR TRANSMITTER | QA07638BS1 | QA07638BS1 | RE11-5486 | 695.00 | 695.00 | 695.00 | |
| 1 | DEBRIS MONITOR | 301-800-301-0 | 557-902-0 | YU087456-A | N/R | N/R | 695.00 | |
| 1 | ECU SOFTWARE | 2044828P07 | 2044828P08 | 0152 | N/R | N/R | N/R | VERSION 5B.T.F1 (5B57) |
| 1 | ELECTRONIC CONTROL UNIT - ECU | 2123855P04 | 2123856P04 | LM084018 | N/R | N/R | 4.73 | |
| 1 | FUEL FILTER DOWNSTREAM | 301-807-203-0 | FA009740 | EM377220-G | 695.00 | 695.00 | 695.00 | |
| 1 | FUEL FLOW TRANSMITTER | 1853849P04 | 8TJ167GHV1 | FEC123372 | 30,255.00 | 30,255.00 | 30,255.00 | |
| 1 | FUEL PUMP | 301-797-402-0 | 724400-2 | EM596987-C | 695.00 | 695.00 | 695.00 | |
| 1 | FUEL, HYDROMECHANICAL UNIT | 1349817P13 | 8061-936 | WYY385559 | N/R | 10,983.73 | 4.73 | |
| 1 | FUEL, SERVO HEATER | 301-789-102-0 | 45731-1382 | EM156595 | 30,255.00 | 30,255.00 | 695.00 | |
| 1 | IDENTIFICATION PLUG | 390-611-201-0 | 390-611-501-0 | YJ3681922-U | N/R | N/R | N/R | |
| 1 | IGNITION, EXCITER UNIT LOWER | 9239866P08 | 10-631945-2 | UNJG03246 | 30,255.00 | 30,255.00 | 695.00 | |
| 1 | IGNITION, EXCITER UNIT UPPER | 9239846P08 | 10-631945-2 | UNJG03343 | 30,255.00 | 30,255.00 | 695.00 | |
| 1 | OIL, IDG OIL COOLER | 301-790-101-0 | 45731-1391 | Y0807990-K | 30,255.00 | 30,255.00 | 695.00 | |
| 1 | OIL, LUBRICATION UNIT | 337-075-105-0 | 337-075-105-0 | 11915 | 30,255.00 | 695.00 | 695.00 | |
| 1 | OIL, VISUAL INDICATOR | 301-799-403-0 | 1658100-01 | YU106723-K | N/R | N/R | 695.00 | |
| 1 | OIL FUEL HEAT EXCHANGER | 301-780-602-0 | 45532-8039 | YB026366-G | 30,255.00 | 695.00 | 695.00 | |
| 1 | SENSOR, N1 SPEED | 320-557-503-0 | 320-557-503-0 | EM1820613 | 30,255.00 | 30,255.00 | 695.00 | |
| 1 | SENSOR, N2 SPEED | 320-549-005-0 | 320-549-005-0 | EM1627T6-A | 30,255.00 | 30,255.00 | 30,255.00 | |

N/R: NOT RECORDED
HSN: HMS SERIAL NUMBER
N/V: PART INSTALLED, NOT VISIBLE

1 OF 5

Lease-PIA-697262

17

WILLIS LEASE FINANCE, AS SERVICER
CFM56-5B
ACCESSORY INVENTORY

| QTY | DESCRIPTION | TYPICAL PART NUMBER | PART NUMBER | SERIAL NUMBER | TSN | TSO | TSI/TSR | REMARKS |
|---|---|---|---|---|---|---|---|---|
| 1 | SENSOR, T3 | 1853M47P02 | 1853M47P02 | GDBM9622 | NIR | NIR | 695.00 | ALT P/N 81C19AAR1 |
| 1 | SENSOR, TEMP T12 | 301-794-602-0 | RP198-02 | YC136994-R | NIR | NIR | NIR | |
| 1 | SENSOR, VIBRATION, TRF | 144-405-000-033 | 144-405-000-033 | 28286 | NIR | NIR | 695.00 | |
| 1 | VALVE, FUEL RETURN | 301-810-903-0 | 8910-332 | EM0781948 | 30,255.00 | 30,255.00 | 695.00 | |
| 1 | VALVE, HPT CLEARANCE CONTROL | 1960M29P05 | 3296056-6 | 665FJ | 15,982.78 | 695.00 | 695.00 | |
| 1 | VALVE, LPT CLEARANCE CONTROL | 301-796-303-0 | C251750003 | EM5732414-F | NIR | 695.00 | 695.00 | |
| 1 | VALVE, TRANSIENT BLEED | 1853M12P04 | 329H390-4 | GR159730 | 30,255.00 | 30,255.00 | 695.00 | |
| 1 | VBV HYDRAULIC GEAR MOTOR | 301-774-709-0 | 396800-12 | YA015269-C | NIR | 695.00 | 695.00 | |
| 1 | VBV POSITION SENSOR | 301-808-002-0 | VG22-01 | YY030067-3 | NIR | NIR | 695.00 | |
| 1 | VBV STOP MECHANISM | 301-781-404-0 | 3282970-4 | YG094403-8 | NIR | 695.00 | 695.00 | |
| 1 | MASTER VBV ACTUATOR | 301-776-206-0 | 121666-13 | 201920 | NIR | 695.00 | 695.00 | |
| 1 | VSV ACTUATOR LH | 1324M12P10 | 1211313-010 | AN408 | 695.00 | 695.00 | 695.00 | |
| 1 | VSV ACTUATOR RH | 1324M12P10 | 1211313-010 | AN410 | 695.00 | 695.00 | 695.00 | |

2 OF 5

NIR: NOT RECORDED
NSN: NO SERIAL NUMBER
N/V: PART INSTALLED, NOT VISIBLE

Lease-PIA-697262

18

**WILLIS LEASE FINANCE, AS SERVICER**
**CFM56-5B**
**ACCESSORY INVENTORY**

| QTY | DESCRIPTION | TYPICAL PART NUMBER | PART NUMBER | SERIAL NUMBER | TSN | TSO | TSI/TSR | REMARKS |
|---|---|---|---|---|---|---|---|---|
| 1 | ELECTRICAL HARNESS CJ11L | 325-014-802-0 | 325-014-802-0 | YH359005 | N/R | 695.00 | 695.00 | |
| 1 | ELECTRICAL HARNESS CJ11R | 320-290-101-0 | 320-290-101-0 | YH564294 | N/R | 695.00 | 695.00 | |
| 1 | ELECTRICAL HARNESS CJ12L | 325-014-901-0 | 325-014-901-0 | YH406501 | N/R | 695.00 | 695.00 | |
| 1 | ELECTRICAL HARNESS CJ12R | 320-290-301-0 | 320-290-301-0 | YH567407 | N/R | 695.00 | 695.00 | |
| 1 | ELECTRICAL HARNESS CJ13 | 320-401-201-0 | 320-401-201-0 | YH186623 | N/R | 695.00 | 695.00 | |
| 1 | ELECTRICAL HARNESS DPM | 320-298-101-0 | 320-298-101-0 | YH579398 | N/R | N/R | 695.00 | |
| 1 | ELECTRICAL HARNESS J10 | 320-372-602-0 | 320-372-602-0 | YH552630 | N/R | 695.00 | 695.00 | |
| 1 | ELECTRICAL HARNESS J11 | 320-364-401-0 | 320-364-401-0 | YH557407 | N/R | 695.00 | 695.00 | |
| 1 | ELECTRICAL HARNESS J12 | 320-296-801-0 | 320-296-801-0 | YH561402 | N/R | 695.00 | 695.00 | |
| 1 | ELECTRICAL HARNESS J13 | 320-401-101-0 | 320-401-101-0 | YH174399 | N/R | 695.00 | 695.00 | |
| 1 | ELECTRICAL HARNESS J7 | 320-401-401-0 | 320-401-401-0 | YH524405 | N/R | 695.00 | 695.00 | |
| 1 | ELECTRICAL HARNESS J8 | 320-392-702-0 | 320-392-702-0 | YH548405 | N/R | 695.00 | 695.00 | |
| 1 | ELECTRICAL HARNESS J9 | 320-364-203-0 | 320-364-203-0 | YH519033 | N/R | 695.00 | 695.00 | |
| 1 | ELECTRICAL HARNESS - WIRING EGT COUPLING | 301-800-104-0 | 301-800-104-0 | YC391699-3 | N/R | N/R | 695.00 | |
| 1 | ELECTRICAL HARNESS - WIRING EGT LOWER | 301-796-004-0 | 301-796-004-0 | YC3816717 | N/R | N/R | 695.00 | |
| 1 | ELECTRICAL HARNESS - WIRING EGT UPPER | 301-795-904-0 | 301-795-904-0 | YC3717102 | N/R | N/R | 695.00 | |
| 1 | ELECTRICAL HARNESS - WIRING EGT - 2TC | 301-795-804-0 | 301-795-804-0 | YC423822-2 | N/R | N/R | 695.00 | |
| 1 | ELECTRICAL HARNESS - WIRING EGT - 2TC | 301-795-804-0 | 301-795-804-0 | YC423739-T | N/R | N/R | 695.00 | |
| 1 | ELECTRICAL HARNESS - WIRING EGT - 2TC | 301-795-804-0 | 301-795-804-0 | YC425593-F | N/R | N/R | 695.00 | |
| 1 | ELECTRICAL HARNESS - WIRING EGT - 3TC | 301-795-705-0 | 301-795-705-0 | YC431279-W | N/R | 695.00 | 695.00 | |
| 1 | FUEL NOZZLE | 1317M47G01 | 1317M47G01 | PCY028E9 | N/R | 695.00 | 695.00 | |
| 1 | FUEL NOZZLE | 1317M47G01 | 1317M47G01 | PCY029E2 | N/R | 695.00 | 695.00 | |
| 1 | FUEL NOZZLE | 1317M47G01 | 1317M47G01 | PCY028E3 | N/R | 695.00 | 695.00 | |
| 1 | FUEL NOZZLE | 1317M47G01 | 1317M47G01 | PCY028E6 | N/R | 695.00 | 695.00 | |
| 1 | FUEL NOZZLE | 1317M47G01 | 1317M47G01 | PCY029E7 | N/R | 695.00 | 695.00 | |
| 1 | FUEL NOZZLE | 1317M47G01 | 1317M47G01 | PCY028E8 | N/R | 695.00 | 695.00 | |

N/R: NOT RECORDED
N/S/N: NO SERIAL NUMBER
N/V: PART INSTALLED, NOT VISIBLE

3 OF 5

Lease-PIA-697262

19

**WILLIS LEASE FINANCE, AS SERVICER**
**CFM56-5B**
**ACCESSORY INVENTORY**

| QTY | DESCRIPTION | TYPICAL PART NUMBER | PART NUMBER | SERIAL NUMBER | TSN | TSO | TSR/TSR | REMARKS |
|---|---|---|---|---|---|---|---|---|
| 1 | FUEL NOZZLE | 1317M47G16 | 1317M47G16 | PCYHN094 | N/R | 695.00 | 695.00 | |
| 1 | FUEL NOZZLE | 1317M47G16 | 1317M47G16 | PCYHN093 | N/R | 695.00 | 695.00 | |
| 1 | FUEL NOZZLE | 1317M47G01 | 1317M47G01 | PCY029E3 | N/R | 695.00 | 695.00 | |
| 1 | FUEL NOZZLE | 1317M47G01 | 1317M47G01 | PCY028E8 | N/R | 695.00 | 695.00 | |
| 1 | FUEL NOZZLE | 1317M47G01 | 1317M47G01 | PCY029E5 | N/R | 695.00 | 695.00 | |
| 1 | FUEL NOZZLE | 1317M47G01 | 1317M47G01 | PCY028E6 | N/R | 695.00 | 695.00 | |
| 1 | FUEL NOZZLE | 1317M47G01 | 1317M47G01 | PCY029E4 | N/R | 695.00 | 695.00 | |
| 1 | FUEL NOZZLE | 1317M47G16 | 1317M47G16 | PCYHN096 | N/R | 695.00 | 695.00 | |
| 1 | FUEL NOZZLE | 1317M47G16 | 1317M47G16 | PCYHN095 | N/R | 695.00 | 695.00 | |
| 1 | FUEL NOZZLE | 1317M47G01 | 1317M47G01 | PSØK-J9I8 | 695.00 | 695.00 | 695.00 | |
| 1 | FUEL NOZZLE | 1317M47G01 | 1317M47G01 | PCY028E4 | N/R | N/R | N/R | |
| 1 | FUEL NOZZLE | 1317M47G01 | 1317M47G01 | PCY028E3 | N/R | N/R | N/R | |
| 1 | FUEL NOZZLE | 1317M47G01 | 1317M47G01 | PCY029E1 | N/R | 695.00 | 695.00 | |
| 1 | FUEL NOZZLE | 1317M47G01 | 1317M47G01 | PCY028E7 | N/R | 695.00 | 695.00 | |
| 1 | GEARBOX, ACCESSORY | 338-089-703-0 | 338-089-703-0 | WJ5723 | 30,255.00 | 695.00 | 695.00 | |
| 1 | GEARBOX, TRANSFER | 338-089-601-0 | 338-089-601-0 | VJ7204 | 30,255.00 | 695.00 | 695.00 | |
| 1 | HPTCC THERMOCOUPLE | 1324M44I03 | 81C190AH1 | FDT80718 | N/R | N/R | 695.00 | |
| 1 | IGNITION LEAD ASSY LH | 9387M24P16 | 9045110-16 | KDT717 | 695.00 | 695.00 | 695.00 | |
| 1 | IGNITION LEAD ASSY RH | 9387M24P16 | 9045110-16 | KDT716 | 695.00 | 695.00 | 695.00 | |
| 1 | VISUAL INDICATOR | 335-260-905.0 | N/V | N/V | N/R | N/R | N/R | |
| 1 | OIL TANK | 301-809-702-0 | 24F5202 | EM4767926 | 30,255.00 | 30,255.00 | 30,255.00 | |

NR: NOT RECORDED
NSN: NO SERIAL NUMBER
NIV: PART INSTALLED, NOT VISIBLE

4 OF 5

**WILLIS LEASE FINANCE, AS SERVICER**
**CFM56-5B**
**ACCESSORY INVENTORY**

| QTY | DESCRIPTION | TYPICAL PART NUMBER | PART NUMBER | SERIAL NUMBER | TSN | TSO | TSI/TSR | REMARKS |
|---|---|---|---|---|---|---|---|---|
| QTY | DESCRIPTION | TYPICAL PART NUMBER | PART NUMBER | SERIAL NUMBER | TSN | TSO | TSI/TSR | REMARKS |
| 1 | SENSOR, TEMP T25 | 301-797-701-0 | RP216:00 | YQ059495-B | 30,255.00 | 30,255.00 | 30,255.00 | |
| 1 | ALTERNATOR, ROTOR | 2123M62P01 | 8S465.1 | GJA39748 | 30,255.00 | 30,255.00 | 30,255.00 | |
| 1 | IGNITER PLUG, MAIN LH | 1374M12P10 | N/V | N/V | N/R | N/R | N/R | |
| 1 | IGNITER PLUG, MAIN RH | 1374M12P10 | N/V | N/V | N/R | N/R | N/R | |
| 1 | SENSOR, VIBRATION, #1 BEARING | 301-799-601-0 | N/V | N/V | N/R | N/R | N/R | |

NIR- NOT RECORDED
NSN-NO SERIAL NUMBER
N/V- PART INSTALLED, NOT VISIBLE

Lease-PIA-697262

21

Appendix D



# Monthly Engine Utilization and Status Report

## *Utilization Data is DUE on the 10TH Business Day of Each Month*

To:

**Willis Lease Finance Corp.**
**Attention:** Finance Department
e-mail: ar@willislease.com or
Fax: +1 415-408-4706 (email preferred)

**Attention:** Technical Department
e-mail: bmatson@willislease.com
e-mail: apatterson@willislease.com

From: _____

Company Name: _____

Customer Fax#: _____

Customer e-Mail: _____

Month/Year: _____ / _____

| | |
|---|---|
| **1. Engine Model:** _____ | **2. Serial Number:** _____ |

**3. Total TIME Since New: Hours:** _____ **Minutes:** _____

 **Total CYCLES Since New:** _____

**4. Proven Derate Percentage:** _____ **Attach supporting documents.**

**5. HOURS Flown During Month: Hours:** _____ **Minutes:** _____

**6. CYCLES Flown During Month: Total Cycles:** _____ **Current Thrust Rating :** _____

| | |
|---|---|
| **7. Aircraft:**<br><br> A/C Model: _____<br><br> Registration: _____<br><br> Position: _____ | **8. Thrust Categories Operated Throughout Lease:**<br><br> Rating: _____  Cycles: _____<br><br> Rating: _____  Cycles: _____<br><br> Rating: _____  Cycles: _____ |
| **9. Date Installed:** _____<br>     Or<br> **Date Removed:** _____ | **10. Reason for Removal:** |
| **11. Location of Engine (Country):** | **Please enter amount of Overhaul Reserves**<br>**Paid this Month: $** |

**Appendix E**

**Additional Insureds**
**Additional Indemnitees**

Casualty Insurance:

Sole Loss Payee:

MUFG Union Bank, N.A., its Successors and/or Assigns,
as Security Agent & Administrative Agent
P.O. Box 30115
CLTS – Doc 192
Los Angeles, CA  90030-0115 U.S.A.
Tel: +1 323-720-7396
Fax: +1 323-720-2687
e-mail: CLTSINS@unionbank.com

Liability Insurance:

Additional Insureds:

MUFG Union Bank, N.A., its Successors and/or Assigns,
as Security Agent & Administrative Agent
P.O. Box 30115
CLTS - Doc 192
Los Angeles, CA  90030-0115 U.S.A.
Tel: +1 323-720-7396
Fax: +1 323-720-2687
e-mail: CLTSINS@unionbank.com

Bank of Utah,
(not in its individual capacity and as Owner Trustee)
50 South 200 East, Suite 110
Salt Lake City, Utah 84111 U.S.A.
Attn: Corporate Trust
Fax:  +1 801.746.3519
e-mail: corptrust@bankofutah.com

Willis Lease Finance Corporation
60 East Sir Francis Drake Blvd., Suite 209
Larkspur, California 94939 U.S.A.
Attn:  General Counsel
Fax: +1 (415) 408-4701
e-mail: insurance@willislease.com

The respective directors, officers, employees, agents and affiliates of the foregoing additional insureds and their respective successors and assigns.

Lease-PIA-697262

23

**Appendix F**
**Redelivery–Additional Documentation**

a. Current FAA Form 8130-3 Airworthiness Approval Tag with Dual EASA release or Current EASA Form 1 Airworthiness Approval Tag with Dual FAA release.
b. Current LLP Status to include LLP cycles usage and LLP cycles remaining by each thrust category.
c. Current Airworthiness Directive (AD) status and any AD compliance throughout the Term, to include Airframe ADs associated with the Engine and QEC installed parts.
d. List of SB/ASB/AOW complied with during the Term.
e. Copy of logbook (if applicable).
f. Logs of Engine Flight Hours and Engine Flight Cycles operated during the Term.
g. All relevant defect or pilot reports/occurrences during the Term.
h. Documentation for all inspections performed in accordance with the operators approved maintenance program throughout the Term. (Include Engine Mount inspection status).
i. Documentation for all scheduled and unscheduled maintenance performed throughout the Term. (Include Gas path wash, results of any On-wing tests performed, Fan Blade Lube status and Blade Map, and if applicable to engine model the current Tap Test and any Test results.)
j. ECM data (Take Off and Cruise) to include both mechanical and performance parameters for all operation of the Engine throughout the Term.
k. A document showing the average derated Take Offs recorded for the Engine throughout the Lease Term.
l. Airworthiness Release Forms and applicable trace for components and accessories replaced during the Term.
m. Complete Accessory and QEC/EBU component inventory.
n. Oil consumption throughout the Term.
o. List of carry forward / Deferred maintenance items.
p. Engine preservation documentation to include a) the date and term of preservation, b) the preservation of the fuel and oil system, c) the Engine purged of residual fuels, d) the type of fuel system preservation fluid used, e) the type of oil system preservation used and f) the oil tank drained of oil.
q. Copy of the engine preservation tag (original to be shipped with Engine).
r. All original documentation and records provided with the Engine at Delivery.

**\* Combination Statement Template Includes:**
s. Statement identifying the Engine's serviceability status at time of its removal
t. ETOPS status Statement. (For Non-ETOPS operators, a statement identifying that the modification standard of the Engine has not been lowered from its as-delivered status will be required)
u. Statement identifying that the Engine did not reach or exceed any limitations throughout the Term.
v. Statement identifying that the Engine experienced no abnormal occurrences throughout the Term.
w. Statement identifying any operation in or near volcanic ash cloud throughout the Term.
x. Statement identifying no Non-OEM approved repairs were incorporated into the engine/QEC.
y. Statement identifying no Non-OEM approved parts are installed on engine/QEC.
z. Statement identifying EEC software changes during the Term (if applicable by engine model).
aa. Oil type(s) used throughout the Term.
bb. Statement identifying any use of CIS Fuels and additives during the Term.
cc. Statement identifying any Fatty Acid Methyl Ester (FAME) Contamination.
dd. Statement that the Engine was maintained and operated in accordance with the manufacturer's practices, procedures and approved data throughout the Term.

**\* Engine Installation and Removal History Template Includes:**
ee. Aircraft registration and serial number, installed position(s), all thrust(s) operated, and Total Aircraft Time (TAT) and Total Aircraft Cycles (TAC) at installation(s) and removal(s) of the Engine.

**\* Non Incident Statement Template Includes:**
ff. A certificate stating that, during the Term, the Engine was not **(a)** involved in an accident, incident, fire or a major failure, **(b)** exposed to stress or heat beyond limits, **(c)** immersed in salt water or exposed to corrosive agents outside normal operation, or **(d)** operated by a Government Entity. (Specimen attached to this Lease Agreement as Appendix G.)

\* Annotates templates provided by WLFC for lessee (operator) certification

Appendix G

<u>To be printed on Operator's letterhead</u>

**ENGINE CERTIFICATION**

This statement certifies that Engine _____ s/n _____, has not been involved in an incident or accident, major failure, or fire, nor has the Engine or the parts installed thereon, been immersed in salt water or exposed to corrosive agents outside normal operation, been subjected to extreme stress or heat nor been obtained from any Government, Military or Unapproved Source while Leased and/or Operated by _____, and in the case of a part installed on the Engine while Leased and/or Operated by _____, has not been subjected to, or removed from an engine that has been involved in an incident or accident, major failure, or fire, or been subjected to extreme stress or heat nor been obtained from any Government, Military or Unapproved Source.

Engine status at time of Delivery to _____:

Engine Total Time: _____    Engine Total Cycles: _____    Date: _____

Engine status at time of Redelivery to _____:

Engine Total Time: _____    Engine Total Cycles: _____    Date: _____

Signature:

Name:

Title:

Date:

Lease-PIA-697262                                      25

**Appendix H**

[to be printed on company letterhead]

**<u>Recognition Agreement</u>**

_____, 2021

Bank of Utah,
as Owner Trustee
50 South 200 East, Suite 110
Salt Lake City, UT 84111 U.S.A.

Willis Lease Finance Corporation
60 East Sir Francis Drake Blvd., Suite 209
Larkspur, California 94939 U.S.A.
Attn:  General Counsel
Fax: +1 (415) 408-4701
e-mail: insurance@willislease.com

Re:    **Recognition of Rights/Interests in Engine**

Dear Sir/Madam,

Reference is made to the Lease Agreement dated as of _____, 2022 between you and Pakistan International Airlines Corporation Limited ("**Lessee**") ("**Master Engine Agreement**") permitting Lessee to lease one (1) CFM International model CFM56-5B6/P aircraft engine, bearing serial number 697262 ("**Engine**") on a short-term basis.

We hold a proprietary interest in [aircraft type and model] bearing manufacturer's serial number [msn] ("**Aircraft**").

In consideration of the benefits associated with the use of the Engine on the Aircraft, subject to the terms of the Master Engine Agreement, we hereby agree to:

(i)       recognise your and your creditors' rights and interests in the Engine installed on the Aircraft; and

(ii)      not claim or assert, as against you or your creditors, any right, title or interest in the Engine arising by virtue of the installation of such Engine on the Aircraft.

This letter (Recognition Agreement) shall be governed by and construed in accordance with the laws of New York.

[person with proprietary interest in the Aircraft]

By:      _____
Date:    _____

Lease-PIA-697262                                          26

Appendix I

**Deregistration Power of Attorney**
(the "Power of Attorney")

The undersigned, **PAKISTAN INTERNATIONAL AIRLINES CORPORATION LIMITED** (the "**Company**") this _____ day of _____, _____ refers to the Lease Agreement dated _____, 2022 (as novated, amended and supplemented from time to time, the "**Agreement**") between BANK OF UTAH, not in its individual capacity but solely as owner trustee ("**Lessor**") and the Company with respect to (1) CFM International model CFM56-5B6/P engine with serial number 697262, together with QEC Kit, Shipping Stand, MVP Bag and Engine Documentation (as defined in the Agreement) (collectively, the "**Engine**").

As security for the performance of the Company's obligations under the Agreement, the Company hereby IRREVOCABLY APPOINTS each of the Lessor and Willis Lease Finance Corporation (each an "**Attorney**"), each with power to act severally, its true and lawful attorney to perform the following acts upon its behalf and in its name or otherwise:

(a)     to execute and to do and perform on behalf of the Lessee and in the name of the Lessee or otherwise to deliver any applications, documents, forms, consents, instruments, undertakings, declarations, or certificates which may be appropriate or required in connection with the Lessee's obligations under the Agreement (including without limitation all rights of the Lessee with respect to any insurances and/or reinsurances and/or proceeds thereof in relation to the Engine and/or any Part (as defined in the Agreement) and/or the Engine Documentation) and to obtain any and all permits, licenses, approvals, or consents required to foreclose, repossess, deregister, and/or export the Engine from Pakistan upon the termination of the leasing of the Engine under the Agreement whether by expiration of time or otherwise

(b)     AND generally to do any and all such acts and things and to execute under seal or under hand (as appropriate) and to deliver any and all documents under seal or under hand (as appropriate) as may be appropriate, requested, or required to give effect to any of the terms of the transactions contemplated above or to exercise any of the powers granted herein;

AND the Company hereby undertakes from time to time and at all times to indemnify the Attorney against all costs, losses, claims, expenses, damages and liabilities incurred by such Attorney in connection herewith and further undertakes to ratify and confirm whatsoever the Attorney shall reasonably and lawfully do or cause to be done in or by virtue of this Power of Attorney;

AND for the better doing, performing and executing of the matters and things aforesaid the Company hereby further grants unto the Attorney full power and authority to substitute and appoint in its place one or more attorney or attorneys to exercise for its as attorney or attorneys of the company any or all the powers and authorities hereby conferred and to revoke any such appointment from time to time and to substitute or appoint any other or others in place of such attorney or attorneys as the Attorney shall from time to time think fit.

This Power of Attorney is irrevocable and shall remain in full force and effect until the Engine has been returned to the Lessor in the condition required by the Agreement and will not be discharged or revoked under any other circumstances.

Lease-PIA-697262                                                                27

The Company represents, warrants and covenants that this Power of Attorney constitutes the valid, legally and irrevocably binding obligation of the Company, enforceable against the Company in accordance with its terms.

This Power of Attorney shall be governed by the laws of Pakistan.

**PAKISTAN INTERNATIONAL AIRLINES
CORPORATION LIMITED**

By:      _____
Name:  _____
Title:    _____



Lease-PIA-697262                                        28

**Appendix J**

**Form of Lessee Acknowledgment**

**LESSEE ACKNOWLEDGMENT**

From: Pakistan International Airlines Corporation Limited (the "**Lessee**")

To: Bank of Utah, not in its individual capacity but solely as owner trustee (the "**Lessor**")

Date: _____, 2022

Re: One (1) CFM International model CFM56-5B6/P aircraft engine, bearing serial number 697262 (the "**Engine**")

Ladies and Gentlemen:

We acknowledge receipt of the Notice of Security Assignment dated as of on or about the date hereof (the "**Assignment Notice**") relating to the issuance of notes by Willis Engine Structured Trust V (the "**Issuer**") and notifying us that, in connection with such issuance, pursuant to the Security Trust Agreement dated as of _____ 2022 (the "**Security Trust Agreement**") among the Lessor, the Issuer, the Security Trustee and the other parties named therein, the Lessor has assigned to the Security Trustee, as security, all of the Lessor's right, title and interest in and to the Lease Agreement dated as of _____, 2022 between the Lessor and the Lessee (as amended, supplemented, assigned or otherwise modified from time to time, the "**Lease**") incorporating and supplementing the terms of the Master Short-Term Engine Lease Agreement, 2002 (IATA Document No. 5016-00). Capitalized terms used herein and not defined shall have the meanings assigned to them in the Assignment Notice.

We acknowledge that the Lessor has advised us that the intent and effect of the assignment by the Lessor of the Lease Documents pursuant to the Security Agreement is to confer upon the Security Trustee, from and after the Effective Date, all rights, title and interest of the Lessor under the Lease and the other Lease Documents.

We hereby agree as follows with effect solely from and after the Effective Date (except as otherwise specified below):

(1) To comply with the provisions of the Assignment Notice (including the insurance requirements set forth therein).

(2) If the Security Trustee issues to us a Relevant Notice, we agree that we shall thereafter perform, observe and comply with all our other terms, undertakings and obligations under the Lease and the other Lease Documents in favor and for the benefit of the Security Trustee as if the Security Trustee were named as lessor therein instead of the Lessor.

(3) We agree that after issue by the Security Trustee of any Relevant Notice, we shall not recognize the exercise by the Lessor (or the Servicer) of any of its rights and powers under the Lease Documents unless and until requested to do so in writing by the Security Trustee.

(4) Effective as of the Effective Date (and for the period until you receive written notice from the Security Trustee that the Engine is no longer subject to the Security Trust Agreement) each of (a) the Lease, (b) the Trust Agreement, (c) the Indenture, (d) the Security Trust Agreement, (e) the Servicing Agreement, (f) the Assignment Notice and (g) this Acknowledgment, shall be listed as a "Contract" with respect to the aviation and general third party liability insurance (including the war liability insurance) required to be maintained by the Lessee under the Lease Documents.

Lease-PIA-697262                                                29

(5)     Effective as of the Effective Date, for all purposes of the Lease Documents all monies that may be payable by us or on our behalf under the Lease Documents shall be paid to the Account unless and until the Security Trustee otherwise directs in writing.

(6)     We will deliver to the Security Trustee insurance certificates and letters of undertaking evidencing compliance with the Assignment Notice on or before the Effective Date.

THIS ACKNOWLEDGMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

This Acknowledgement and the undertakings contained herein are irrevocable unless we receive notice in writing to the contrary from the Security Trustee.

Very truly yours,

For and on behalf of

**PAKISTAN INTERNATIONAL AIRLINES CORPORATION LIMITED**

By: _____
        Name:
        Title:

